**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| MERCEDES-BENZ USA, LLC, | : | |
| | : | |
| Plaintiff, | : | **OPINION** |
| | : | |
| v. | : | Civ. No. 08-3529 (WHW) |
| | : | |
| ATX GROUP, INC. (F/K/A ATX TECHNOLOGIES, INC.) | : | |
| | : | |
| | : | |
| Defendant. | : | |
| | : | |

**Walls, Senior District Judge**

This dispute involves breach of contract and trademark infringement claims related to certain technologies used for in-car navigation systems. Defendant ATX Group, Inc. ("ATX") moves to dismiss the complaint of Plaintiff Mercedes-Benz USA, LLC ("Mercedes") or, in the alternative, to transfer venue to Texas.

## FACTS AND PROCEDURAL BACKGROUND

Plaintiff is a Delaware corporation that is the U.S. subsidiary of DaimlerChrysler, a large automobile and commercial vehicle manufacturer. Plaintiff's primary place of business is in New Jersey.  In 1999, Plaintiff contracted with Defendant ATX, a Texas corporation with its principal place of business in Dallas, to provide "telematics" services to its customers. Telematics services allow the transfer of real-time information to and from a vehicle. This information can provide the driver with traffic updates and driving directions and also alert the telematics service center if the vehicle needs service, has been stolen or has been in an accident.

**NOT FOR PUBLICATION**

Approximately 300,000 MBUSA customers currently subscribe to ATX's telematics services for their vehicles

In 2003, MBUSA and ATX signed a subsequent telematics services agreement, the "Telematics Services Agreement" ("Agreement"), establishing ATX as the exclusive provider of telematics services to MBUSA customers under the brand name "Tele Aid" for the duration of the contract. The term of the Agreement was four years with automatic extensions until two years from the date either party served written notice of its desire to terminate. On November 15, 2007, MBUSA sent written notice to ATX of its desire to terminate the contract with a termination date of November 15, 2009.

MBUSA states in its complaint that it is currently preparing for a "seamless transition to a new service provider following the termination of the Agreement." (Complaint at para. 3). In a June 6, 2008 letter, MBUSA asked ATX to deliver copies of records relating to Tele Aid customers ("Customer Records") to help prepare for this transition. MBUSA also asked ATX to transfer ownership and control of the Tele Aid website. ATX refused, stating that the Agreement does not permit MBUSA to demand access to Customer Records beyond the limited need to audit ATX's performance under the contract.  ATX also claims that it has a vested right to the Tele Aid trademark and related marketing materials, including the Tele Aid website.

The ownership of the Customer Records and the Tele Aid trademark is the primary subject of this dispute.

**STANDARD OF REVIEW**

Motion to Dismiss

NOT FOR PUBLICATION

A Rule 12(b)(6) motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts  to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007); see also In re Warfarin Sodium Antitrust Litig., 214 F.3d 395, 397 (3d Cir. 2000) (stating that a complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Twombly, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. at 1964-65 (internal citations omitted); see also FED. R. CIV. P. 8(a)(2). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly at 1965 (internal citations omitted). "The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure Civil 2d § 1357 at 340) (2d ed. 1990)).

A court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party.

NOT FOR PUBLICATION

Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384-85 (3d Cir. 1994); see also

Sturm v. Clark, 835 F.2d 1009, 1011 (3d Cir. 1987). The question is whether the claimant can

prove any set of facts consistent with his or her allegations that will entitle him to relief, not

whether that person will ultimately prevail. Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d

Cir. 2000).

 While a court will accept well-pled allegations as true for the purposes of the motion, it

will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping

legal conclusions cast in the form of factual allegations. Morse v. Lower Merion Sch. Dist., 132

F.3d 902, 906 n.8 (3d Cir. 1997). "The defendant bears the burden of showing that no claim has

been presented." Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).

 In reviewing a motion to dismiss, pursuant to Rule 12(b)(6), a court may consider the

allegations of the complaint, documents attached to or specifically referenced in the complaint,

and matters of public record. Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 259 (3d Cir.

1998); see also 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure: Civil

3d § 1357 (3d ed. 2007).

 Diversity Jurisdiction

 For a plaintiff to establish federal diversity jurisdiction, the amount in controversy must

exceed $75,000, exclusive of interests and costs. 28 U.S.C. § 1332(a). The burden is on the

plaintiff to prove the existence of jurisdiction. Mortensen v. First Fed. Sav. & Loan Ass'n, 549

F.2d 884, 891 (3d Cir. 1977). Unless the law gives a different rule, the sum claimed by the

plaintiff controls if the claim is apparently made in good faith; it must appear to a legal certainty

**NOT FOR PUBLICATION**

that the claim is really for less than the jurisdictional amount to justify dismissal. St. Paul

Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288-89, 58 S. Ct. 586, 82 L. Ed. 845

(1983); Columbia Gas Transmission Corp. v. Tarbuck, 62 F.3d 538, 541 (3d Cir. 1995) (holding

that dismissal is appropriate only if the federal court is certain that the jurisdictional amount

cannot be met); Nelson v. Keefer, 451 F.2d 289, 292-93 (3d Cir. 1971). Finally, the Court's

inquiry can only focus on facts that existed at the time the Complaint was filed. Suber v.

Chrysler Corp., 104 F.3d 578, 584 (3d Cir. 1997).

Transfer of Venue

28 U.S.C. § 1404(a) provides:  "For the convenience of parties and witnesses, in the

interest of justice, a district court may transfer any civil action to any other district or division

where it might have been brought."  In ruling on a motion under this provision, the court is free

to consider "all relevant factors," and the Third Circuit directs district courts to a list of private

and public interest factors. See Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995)

(considering plaintiff's choice of forum, the defendant's preference, where the claim arose, the

convenience of parties and witnesses, and the location of books and records, as well as relative

court congestion, any local interest in deciding localized controversies, and public policies of the

fora).

## DISCUSSION

A. **Jurisdiction**

Defendant argues that the amount in controversy does not support diversity jurisdiction.

(ATX br. at 16-17). While plaintiff's complaint does not quantify the amount of damages sought,

**NOT FOR PUBLICATION**

it is clear that based upon alleged damages to its trademark rights and interference with its

customer relations that it is more likely than not that damages will exceed $75,000.00 if MBUSA

prevails. In this analysis, the Court need and does not consider the complaint's demand for

punitive damages. In New Jersey it is most unlikely that breach of contract claims could support

the grant of punitive damages.

Defendant asserts that plaintiff "cannot meet its burden on this motion because, as shown

herein, the Agreement does not give ATX [sic] the right to use ATX's records and Tele Aid

website." (ATX br. at 17). This argument is unpersuasive since it does not address the amount in

controversy but rather the merit of plaintiff's claims. As plaintiff explains, there is little doubt

that the amount in controversy exceeds $75,000.00:

> There are currently more than 300,000 active Tele Aid subscribers in the U.S. and Puerto
> Rico.  ATX's contractual breach and trademark infringement are jeopardizing not only
> MBUSA's relationship with these 300,000 subscribers, but also MBUSA's relationship
> with potential future subscribers as well.  Accordingly the value of MBUSA's
> jeopardized contract and trademark rights are, as ATX knows, in excess of $75,000 to a
> plainly exponential degree.  MBUSA, in fact, receives in excess of $50 revenue for each
> Tele Aid customer that has a basic package and has selected simply an annual option.

Plaintiff's complaint pleads sufficient facts to support a finding that the amount in controversy

supports diversity jurisdiction. Having found that plaintiff has sufficiently plead diversity

jurisdiction, this Court need not address defendant's motion to dismiss for lack of federal

question jurisdiction. Defendant's motion to dismiss for lack of jurisdiction is denied.

B. **Venue**

As an alternative to its motion to dismiss for lack of jurisdiction, defendant asks this

Court to transfer this matter to the Northern District of Texas. 28 U.S.C. § 1404(a) provides that

NOT FOR PUBLICATION

"[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In determining whether to transfer a case pursuant to § 1404(a), courts in the Third Circuit apply the public and private interest factors outlined in Jumara v. State Farm Ins. Co. (55 F.3d 873, 879-80 (3d Cir. 1995)). With regard to the private interests, courts consider: (1) the plaintiff's choice of forum; (2) the defendant's preferred forum; (3) where the claim arose; (4) the convenience of the parties; (5) the convenience of the witnesses, but only to the extent that the witnesses may be unavailable for trial in one of the fora; and (6) the location of books and records, again, only to the extent that they may not be available in one of the fora. Id. at 879. With regard to the public interests, courts consider: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easier, quicker, or less expensive; (3) court congestion; (4) local interest in the controversy; (5) public policies of the fora; and (6) the trial judge's familiarity with the applicable state law. Id. at 879-80. The movant bears the burden of establishing the need for transfer. Id. at 879. "It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice 'should not be lightly disturbed.'" Shutte v. Armco Steel Corp., 431 F.2d 22 (3d Cir. 1970) (quoting Ungrund v. Cunningham Brothers, Inc., 300 F. Supp. 270, 272 (S.D. Ill. 1969)).

Although the burden is on the defendant to prove that these factors weigh heavily in favor of transfer, see id., "the plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant[s] by inflicting . . . expense or trouble not necessary to [its] own right to pursue [its] remedy." Gulf Oil v. Gilbert, 330 U.S. 501, 508 (1947).  Overall

**NOT FOR PUBLICATION**

however, defendant must show that the balance of the public and private factors "tips decidedly in favor of trial in the foreign forum" and if "when added together, the relevant private and public interest factors are in equipoise, or even if they lean only slightly toward dismissal, the motion to dismiss must be denied." Lacey v. Cessna Aircraft Co., 932 F.2d 170, 180 (3d Cir. 1991). Additionally, a court will not transfer venue if such transfer would simply shift the burden of litigation amongst the parties. Travelodge Hotels, Inc. v. Mangat Houston Race Track, LLC, 2007 U.S. Dist. LEXIS 53655, *23 (D.N.J. Jul. 24, 2007).

I. *The Private Interest Factors*

a. Choice of Forum and Locus of Claims

In general, "a court must generally defer to the plaintiff's choice of forum, particularly when the plaintiff resides in the forum state." See Panella, 2006 U.S. Dist. LEXIS 59880, at *32 (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255-56 (1981)). MBUSA, a New Jersey corporation, has elected to file its claim in New Jersey. ATX offers no explanation as to why MBUSA's choice of New Jersey as a forum should be discounted other than arguing that Texas is also an appropriate forum for this dispute. Similarly, ATX argues that Texas is the appropriate forum since the disputed records are located in Texas. This argument is equally unavailing since the central dispute in this matter is the ownership of the customer records, and the Tele-Aid trademark, and not any particular aspect of the records themselves. The facts surrounding the negotiation of the Agreement and the ownership of the customer records weigh equally in favor of New Jersey and Texas as appropriate fora.

b. Location of the Witnesses and Records

-8-

NOT FOR PUBLICATION

ATX argues Texas is the appropriate forum since it is the location of its witnesses and the disputed records. The location of witnesses is a neutral factor since witnesses are located in both New Jersey and Texas. The location of the disputed records is also neutral since there is nothing to suggest that the records, which are admittedly in electronic form, cannot be easily transmitted to MBUSA in New Jersey.

II. *The Public Interest Factors*

a. Enforceability and Efficiency

ATX again argues that since the disputed customer records are located in Texas, conducting a trial and enforcing the judgement would be more efficient in Texas. Again, ATX provides no argument as to why the electronic customer records could not easily be transmitted to New Jersey.

b. Congestion

Citing "published statistics", ATX also argues that the Northern District of Texas has a less congested docket. (Def.'s br. at pg. 25, n.86). This argument is irrelevant. Sterile statistics will always be trumped by reality. This Court will readily accommodate the expeditious litigation and resolution of this matter.

c. Local Interest and Public Policies

ATX argues that Texas has a local interest in protecting the contractual and trademark rights of its citizens. ATX also points out that Texas has a interest in deciding injunction against its citizens, citing a "mandatory venue statute that requires such claims be tried in the district where the defendant is domiciled." (Def.'s br. at 26 (citing TEX. CIV. PRAC. REM. CODE.

-9-

NOT FOR PUBLICATION

65.023 (Vernon 2008)). MBUSA counters that New Jersey has an interest in protecting citizens who have been the victim of contractual breaches and trademark infringement. These competing interests make this a neutral factor.

d. <u>Familiarity with Applicable Law</u>

ATX argues that since Texas law should apply to this case, it is more appropriate for Texas courts to handle this dispute. As discussed in greater detail later, it is too early in this dispute to determine whether New Jersey or Texas law should apply. Even if Texas law were applied, this factor does not weigh in favor of transfer since as this Court noted in <u>Victory Int'l (USA) Inc. v. Perry Ellis Int'l, Inc.</u>, "that a court may have to apply the law of another state is insufficient to support granting a motion to transfer."

In reviewing the public and private factors, this Court finds that a majority of the factors, including the relative interest of the fora, location of witnesses, practical considerations and congestion are either neutral or disfavor transfer. The only factor weighing in favor of transfer to the Northern District of Texas is presence there of the "voluminous" library of customer records and telematics data, the subject of this dispute. (ATX br. at 23). The inconvenience of accessing this large library of customers records is lessened because the "subject records... include numerous *electronic* audio recordings of customer calls and customer billing records." (<u>Id.</u>) (emphasis added). The significance of the customer records is also diminished by defendant's failure to present any reasons as to why the records could not be transferred to New Jersey. <u>See Travelodge</u> at *21 ("[a]lthough all of Defendants' documents are in Texas, Defendants have made no showing as to why these documents could not be transported to New Jersey or

-10-

**NOT FOR PUBLICATION**

electronically produced."). Taking into account all of the <u>Jumara</u> factors, this Court finds that

while the location of the customer records may support transfer of venue to the Northern District

of Texas, the factors as a whole weigh in favor of keeping this matter in the District of New

Jersey. Defendant has not met its burden to demonstrate otherwise. Defendant's motion to

transfer venue is denied.

      C. **Failure To State A Claim**

      Having concluded that jurisdiction and venue are appropriate in this matter, the Court

will now consider defendant's arguments in support of its motion to dismiss for failure to state a

claim.

      I. *Breach of Contract*

      In the Complaint, plaintiff puts forth various claims premised on ATX's breach of the

agreement by failing to deliver the customer records to MBUSA's New Jersey offices. ATX

argues that the Agreement, particularly paragraph 11, does not provide MBUSA with the right to

do anything other than audit ATX's customer records at its Texas offices. Paragraph 11 reads:

> ATX will maintain accurate and complete records of all Services performed pursuant to
> this Agreement, all Customer calls received, billing records and all expenses incurred
> under the terms of this Agreement in such a manner that they may be readily inspected.
> MBUSA or its designated representatives shall have the right, at MBUSA's expense,
> from time to time, but no more frequently than twice annually upon reasonable notice and
> during regular business hours, to inspect and audit those books and records of ATX
> which relate directly to this Agreement and the Services performed hereunder. ATX
> shall cooperate with MBUSA in the conduct of any such inspection and audit. In
> addition, ATX shall at MBUSA's request and expense provide MBUSA with copies of
> any records relating to Customer service calls, billing records or the Services performed
> by ATX hereunder. ATX shall maintain at ATX's expense such records for the periods
> outlined in the Record Retention Policy in Exhibit F. All such records shall be available
> for inspection by MBUSA at ATX's principal place of business during the Term of this
> Agreement and for one (1) year after its termination or expiration. ATX agrees to

**NOT FOR PUBLICATION**

maintain the confidentiality of all such records until they are either destroyed or turned over to MBUSA. ATX's obligation to maintain records, permit audit, remit sums collected for cellular services shall survive the termination or expiration of this Agreement to the extent that ATX continues to provide Basic Package Services to Customers who purchased Vehicles sold as equipped with Tele Aid during the Term of this Agreement.

Defendant presents six different arguments as to why paragraph 11 does not permit MBUSA to retain copies of the customer records or use such records to transition to another telematics provider.

a. <u>Inspection is Limited to ATX's Texas Offices</u>

Defendant first argues that paragraph 11 limits MBUSA's inspection rights geographically to "ATX's principal place of business" and that as a result MBUSA cannot request copies of the customer records to be delivered to its New Jersey office. Plaintiff argues that paragraph 11 provides rights "in addition" to its inspection rights which require ATX to "provide MBUSA with copies of any records" requested. In support of its interpretation, plaintiff cites the general contract principle that all terms of a contract must be given meaning. <u>See</u> <u>Dubrowsky v. Colonial Life & Accident Ins. Co.</u>, 129 F. App'x 691, 693 (3d Cir. 2003) ("[it is a] cardinal principle that each term of a contract should be given meaning so that no term is superfluous"). ATX does not provide a competing contract interpretation principle but does argue that the language cited by MBUSA "is not 'in addition [to the audit procedures in the prior sentences]' as MBUSA's [sp] argues, but 'in addition' to the other obligations of ATX relating to MBUSA's Right to Audit set forth in the prior and subsequent sentences of that paragraph." (ATX Rep. br. at pg. 9).

-12-

NOT FOR PUBLICATION

To resolve these competing interpretations the Court must first determine whether paragraph 11 is clear or ambiguous. A determination of ambiguity is a question of law. See Teamsters Industrial Emp. Welfare Fund v. Rolls-Royce Motor Cars, Inc., 989 F.2d 132, 135 n.2 (3d Cir. 1993). Ambiguity exists "if the terms of the contract are susceptible to at least two reasonable alternative interpretations." Assisted Living of Moorestown, L.L.P. v. Moorestown Twp., 31 F. Supp. 2d 389, 398 (D.N.J. 1998) (citation omitted). If this Court were to determine that paragraph 11 is ambiguous, then its precise meaning would be a question for the fact-finder to answer. See Pittston Co. Ultramar America Ltd. v. Allianz Ins. Co., 124 F.3d 508, 523 (3d Cir. 1997).

At this stage of the proceedings, absent any evidence of the parties' intentions or other extrinsic evidence, "it is simply too early to determine whose interpretation of the relevant provision is correct or even whether the provision is sufficiently ambiguous to warrant referral to the fact-finder." Biovail Corp. Int'l v. Hoechst Aktiengesellschaft, 49 F. Supp. 2d 750, 775 (D.N.J. 1999). This is not a case where the "plain meaning of a contract phrase . . . spring[s] unambiguously from the page" RCI Northeast Servs. Div. v. Boston Edison Co., 822 F.2d 199, 202 (1st Cir. 1987). The Court will be in a better position to determine and resolve any issue of ambiguity in paragraph 11 once discovery has occurred in this case. For now, construing all facts in favor of MBUSA, plaintiff has sufficiently plead a claim for breach of contract based upon its interpretation of paragraph 11.

b. Scope of Records Requested by MBUSA is Too Broad

-13-

**NOT FOR PUBLICATION**

ATX also argues that the records requested by MBUSA in its June 6, 2008 letter go beyond those permitted for audit under paragraph 11. Paragraph 11 permits MBUSA to request "any records relating to Customer service calls, billing records or the Services performed by ATX hereunder." ATX argues that this does not include the "copies of subscriber agreements", customer files and "vehicle... subscriber... account... unit... [and] theft alarm information" requested by MBUSA. (ATX br. at pg. 30). As with the defendant's geographic limitation, this limit on the scope of records under paragraph 11 is also subject to an ambiguity analysis that is premature at this stage. Plaintiff's argument that its request for customer records is permitted under paragraph 11 of the Agreement is reasonable and sufficient to defeat ATX's motion to dismiss.

c. <u>Ownership of Customers and Customer Records</u>

ATX makes various arguments all premised on the assumption that the telematics customer are customers of ATX and not MBUSA. ATX argues that its ownership of the customer services numbers (Agreement para. 1), the limitation on assignment to third parties (Agreement para. 13) and MBUSA's obligation to return materials at the end/termination of the Agreement (Agreement para. 8) all support its claim that the telematics customers belong to ATX and cannot be transferred to a third party telematics provider. ATX also points to its exclusive right to provide services to customers under the Agreement. While these factors certainly support an argument that ATX is an exclusive service provider, this exclusive right is limited *to the temporal term of the contract*. Plaintiff argues that once the term of the Agreement is completed, either through expiration or termination, it has the right to transfer the customers

-14-

**NOT FOR PUBLICATION**

no longer within ATX's exclusive control to a third party provider. On its interpretation of the Agreement, plaintiff adds that the request for records before the expiration of the term of the Agreement is permitted since it is a necessary part of planning such a transition.

Plaintiff's argument is reasonable, especially considering that the Agreement expressly limits the ATX's rights to provide telematics services after the term of the Agreement. ATX points to its right to continued ownership of customer service "800" numbers after termination as evidence of its exclusive right to the telematics customers. (Complaint at para. 109). This, however, is not evidence of ownership but rather a reflection of ATX's right to control customer service for customers that it retains after termination. ATX's *exclusive* rights apply only to MBUSA vehicles retailed during the one year before termination and last only for one year following termination. (Agreement at para. 8).

The parties' competing interpretations reveal an ambiguity in paragraph 11 of the Agreement which, with discovery, may ultimately be resolved in favor of ATX. However, at this stage, plaintiff's reasonable interpretation of the contract is sufficient to overcome defendant's motion to dismiss and to permit this case to proceed to discovery on the breach of contract claims. See Valeo Sistemas Electricos S.A. De C.V. v. CIF Licensing, LLC, 2008 U.S. Dist. LEXIS 53058 (D. Del. 2008) ("[i]t may be that discovery will confirm [defendant's] assertion. On a motion to dismiss, however, the Court cannot adopt [defendant's] position because it is not the only reasonable interpretation of the contract.") Defendant's motion to dismiss plaintiff's breach of contract claims are therefore denied.

d. Covenant of Good Faith and Fair Dealing

-15-

NOT FOR PUBLICATION

Defendant argues that plaintiff's second cause of action for breach of duty of good faith and fair dealing should be dismissed since it is impermissible under the applicable law. (ATX br. at 32-33). Defendant bases its argument on the assumption that under the "governmental interest" choice of law test adopted by the New Jersey courts, Texas law should govern the plaintiff's claims. See Veazey v. Doremus, 103 N.J. 244, 247, 510 A.2d 1187 (1986). Such a fact-intensive analysis is inappropriate at this stage since the parties have yet to conduct any meaningful discovery. See Taylor v. JVC Ams. Corp., 2008 U.S. Dist. LEXIS 43215, *11-12 (D.N.J. May 30, 2006) (in deciding a motion to dismiss, observing that, "assuming that the statutes differ, the second step of the Court's choice-of-law analysis is fact-dependant and, at least in this case, not amenable to decision on a motion to dismiss"). Accordingly, the Court will apply the law of the forum state, New Jersey, to plaintiff's claims for the purpose of deciding defendant's motion to dismiss. See Id.; see also Berry v. Mega Brands Inc., 2009 U.S. Dist. LEXIS 6761 (D.N.J. Jan. 30, 2009) (noting that "at the pleading stage, the Court must apply the law of the forum state") (citation omitted).

Defendant also argues in the alternative that under New Jersey law the covenant of good faith and fair dealing cannot require ATX to transfer the customer records to MBUSA since it would violate ATX's exclusive right to market to customers under the Agreement. (ATX br. at 35). Plaintiff counters that under the Agreement, ATX is only granted a limited right to market to the customers for a period after the termination of the agreement. (MBUSA br. at 33-34). At this stage of the proceedings there are insufficient facts to determine how to reconcile ATX's rights to the telematics customer records with MBUSA's right to terminate the agreement and

-16-

**NOT FOR PUBLICATION**

subsequently transition to a new telematics service. MBUSA has plead sufficient facts to support

its claim that the Agreement requires ATX to furnish customer records. ATX's motion to dismiss

MBUSA's contract claims is denied.

II. *Trademark Claims*

ATX provides several arguments why this Court should dismiss MBUSA's federal and

state trademark claims related to the Tele-Aid domain name. MBUSA's federal claims are made

under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), which reads:

> (a) Civil action.
>   (1) Any person who, on or in connection with any goods or services, or any container
> for goods, uses in commerce any word, term, name, symbol, or device, or any
> combination thereof, or any false designation of origin, false or misleading description of
> fact, or false or misleading representation of fact, which--
>     (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation,
> connection, or association of such person with another person, or as to the origin,
> sponsorship, or approval of his or her goods, services, or commercial activities by
> another person, or
>     (B) in commercial advertising or promotion, misrepresents the nature, characteristics,
> qualities, or geographic origin of his or her or another person's goods, services, or
> commercial activities,
>   shall be liable in a civil action by any person who believes that he or she is or is likely
> to be damaged by such act.

This Court focuses upon the language of § 1125(a) for both the federal and state trademark

claims in this matter since New Jersey's unfair competition statute tracks § 1125(a). Video

Pipeline, Inc. v. Buena Vista Home Entm't, Inc., 210 F. Supp. 2d 552, 560-61 (D.N.J. 2002)

("Section 56:4-1 of the N.J.S.A. is the statutory equivalent of section 43(a)(1) of the Lanham

Act"). It is unspecified in plaintiff's complaint whether its trademark claims are predicated upon

(a)(1)(A)'s false designation of origin cause of action or (a)(1)(B)'s false advertising action.

Because plaintiff's claims are based upon ATX's failure to transfer ownership of the domain

**NOT FOR PUBLICATION**

names and not any "commercial advertising or promotion", this Court will consider plaintiff's

claims as under (a)(1)(A).

a. <u>Trademark Infringement and Unfair Competition</u>

ATX argues that only mark owners and exclusive licensees have standing to sue for

trademark infringement under 43(a). To prove trademark infringement or unfair competition

under § 1125(a)(1)(A) MBUSA must show "(1) it has a valid and legally protectable mark; (2) it

owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a

likelihood of confusion." <u>A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.</u>, 237 F.3d 198,

210 (3d Cir. 2000) (citing <u>Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.</u>, 214

F.3d 432, 437 (3d Cir. 2000)).

MBUSA counters that it need not be an owner or exclusive licensee of the Tele-Aid mark

to assert a claim under § 1125(a)(1)(A). Courts have found that § 1125(a)(1)(A)'s permissive

rule that "any person who believes that he or she is or is likely to be damaged by such act" may

sue permits claims by non-exclusive licensees.. <u>Murphy v. Provident Mut. Life Ins. Co.</u>, 756 F.

Supp. 83, 86 (D.Conn. 1990), <u>aff'd</u>, 923 F.3d 923 (2d Cir. 1990) ("the question of ownership is

immaterial to standing under § 43(a), since standing may lie with mere users of trademarks.");

<u>Quabaug Rubber Co. v. Fabiano Shoe Co.</u>, 567 F.2d 154 (1st Cir. 1977) (non-exclusive

distributor has no standing to sue for infringement of registered mark owned by another, but has

standing under § 43(a)). It is uncontested by the parties that MBUSA is likely to be damaged by

ATX's alleged infringement of the Tele-Aid mark. MBUSA's standing to bring infringement and

unfair competition claims is therefore established. It should also be noted that ATX does not

-18-

NOT FOR PUBLICATION

deny that its retention of the Tele-Aid domain names may cause confusion surrounding the Tele-Aid mark.

ATX also argues that MBUSA's trademark claims are untimely because the Tele-Aid domain names were registered over six years before the filing of this matter. It is generally held that "the statute of limitations for an action begins to run when all the elements of the cause of action are present, or, more plainly, 'from the moment of the wrong.'" <u>Almand Properties Corp. v. Aluminum Co. of Am.</u>, 808 F. Supp. 1187, 1190 (D.N.J. 1992) (quoting <u>Lopez v. Swyer</u>, 62 N.J. 267, 300 A.2d 563, 566 (N.J. 1973)). ATX's statute of limitations argument is unpersuasive since it is clear from MBUSA's complaint that it is ATX's recent refusal to transfer the domain names, not their original registration, which is the source of the alleged harm to plaintiff.

b. <u>False Designation of Origin</u>

ATX asserts that a false designation of origin claim under (a)(1)(A) may not be brought for an intangible good such as the Tele-Aid domain name. This argument arises from the Supreme Court's decision in <u>Dastar Corp. v. Twentieth Century Fox Film Corp.</u> when the Court limited false designation of origin claims to "the producer[s] of the tangible goods that are offered for sale, and not . . . the author of any idea, concept, or communication embodied in those goods." 539 U.S. 23, 37 (2003). The Tele-Aid domain name is not a tangible good and thus would not support a false designation of origin claim under <u>Dastar</u>'s narrowing of Section 43(a). <u>See</u> <u>HRH Architects, Inc. v. Lansing</u>, 2009 U.S. Dist. LEXIS 46255, *11-13 (N.D.Ga. Apr. 22, 2009) (finding that statements on website is the sort of "creative content" excluded from false

-19-

NOT FOR PUBLICATION

designation of origin claims by Dastar). MBUSA's false designation of origin claims under 15

U.S.C. § 1125(a)(1)(A) fail as a matter of law and are dismissed.

## CONCLUSION

MBUSA has plead its contract and trademark claims based upon a reasonable

construction of the Agreement. It is too early in the proceedings for this Court to determine

which parties' construction of the Agreement is correct since potential ambiguities in the

Agreement require consideration of material facts that have yet to be investigated. A choice of

law analysis is also premature since the record lacks the facts necessary to conduct the multi-

factored choice of law analysis. While most of MBUSA's claims are sufficiently plead to defeat

ATX's motion to dismiss, MBUSA's claims for false designation of origin should be dismissed

as a matter of law. Accordingly,

It is on this 27th day of July, 2009:

**ORDERED** that defendant ATX's motion to dismiss is **GRANTED IN PART** such that

MBUSA's claims for false designation of origin are dismissed with prejudice and **DENIED IN**

**PART** against MBUSA's remaining claims.


   s/William H. Walls      
United States Senior District Judge


-20-