**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MERCEDES-BENZ USA, LLC, | : | |
| Plaintiff-Counterclaim Defendant, | : | |
| v. | : | **OPINION** |
| ATX GROUP, INC. (F/K/A ATX TECHNOLOGIES, INC.), | : | Civ. No. 08-3529 (WHW) |
| Defendant-Counterclaim Plaintiff. | : | |

**Walls, Senior District Judge**

Plaintiff Mercedes-Benz USA, LLC ("MBUSA") has moved to dismiss the counterclaims of defendant ATX Group, Inc. ("ATX"). The motion is granted in part and denied in part.

## FACTUAL AND PROCEDURAL BACKGROUND

This Court's July 27, 2009 opinion describes the following, which remains relevant:

Plaintiff is a Delaware corporation that is the U.S. subsidiary of DaimlerChrysler, a large automobile and commercial vehicle manufacturer. Plaintiff's primary place of business is in New Jersey. In 1999, Plaintiff contracted with Defendant ATX, a Texas corporation with its principal place of business in Dallas, to provide "telematics" services to its customers.

Telematics services allow the transfer of real-time information to and from a vehicle. This information can provide the driver with traffic updates and driving directions and also alert the telematics service center if the vehicle needs service, has been stolen or has been in an accident. Approximately 300,000 MBUSA customers currently subscribe to ATX's telematics services for their vehicles.

In 2003, MBUSA and ATX signed a telematics services agreement [(the "2003 Agreement")] . . . , establishing ATX as the exclusive provider of telematics services to MBUSA customers under the brand name "Tele Aid" for the duration of the contract. The term of the Agreement was four years with automatic extensions until two years from the date either party served written notice of its desire to terminate. On November 15, 2007, MBUSA sent written notice to ATX

**NOT FOR PUBLICATION**

> of its desire to terminate the contract with a termination date of November 15, 2009.
>
> MBUSA states in its complaint that it is currently preparing for a "seamless transition to a new service provider following the termination of the Agreement." (Complaint ¶ 3). In a June 6, 2008 letter, MBUSA asked ATX to deliver copies of records relating to Tele Aid customers ("Customer Records") to help prepare for this transition. MBUSA also asked ATX to transfer ownership and control of the Tele Aid website. ATX refused, stating that the Agreement does not permit MBUSA to demand access to Customer Records beyond the limited need to audit ATX's performance under the contract. ATX also claims that it has a vested right to the Tele Aid trademark and related marketing materials, including the Tele Aid website.

(Op. 1-2, July 27, 2009.)  In a May 12, 2009 letter, MBUSA notified ATX that unless ATX cured its alleged breach, MBUSA would terminate the agreement on November 15, 2009.

In addition to the 2003 Agreement, three other contracts are relevant to this matter.  First, on December 14, 1998 MBUSA and Protection One entered into a License Agreement giving Protection One an exclusive right to market and provide telematics services to MBUSA customers (the "License Agreement").  (ATX Answer & Counterclaims 29.)  ATX allegedly acquired this contract when it acquired the Mobile Services assets of Protection One, in 1999. ATX concedes that the License Agreement expired in 2003, when ATX and MBUSA entered the 2003 Agreement, and that the 2003 Agreement "significantly modified the rights of the parties from the [License Agreement]."  (Id.; see Confidentiality Agreement J-2 ¶ 6; 2003 Agreement ¶ 7.)

Second, MBUSA and ATX entered into a confidential disclosure agreement (the "Confidentiality Agreement") simultaneously with the execution of the 2003 Agreement.  (ATX Answer 41.)  The Confidentiality Agreement states:  "MBUSA and ATX are willing to provide to each other, on a confidential basis, the Confidential Information (hereinafter "Confidential Information") which each has determined to be necessary and appropriate for the sole purpose of

**NOT FOR PUBLICATION**

evaluating a possible joint business relationship or other commercial arrangement between the parties concerning such information." (MBUSA Mot. to Dismiss Ex. 1 (Confidentiality Agreement).) After defining Confidential Information in this way, the Confidentiality Agreement goes on to provide restrictions on disclosing either party's Confidential Information to third parties, and to require that each return to the other its Confidential Information at the request of the disclosing party.

Third, MBUSA and ATX together entered into Teleaid Subscriber Agreements for Mercedes-Benz Vehicles (the "Subscriber Agreements") with owners or lessers of MBUSA vehicles. These agreements were typically executed at the time of vehicle purchase or lease. The Subscriber Agreements allowed subscribers to telematics services to choose which service package they wanted, and set forth MBUSA and ATX's obligations to the subscriber and the subscriber's payment and other obligations to MBUSA and ATX.

MBUSA filed suit against ATX on July 14, 2008, seeking declaratory relief, injunctive relief, and damages, arising from ATX's alleged breach of contract, breach of the implied covenant of good faith and fair dealing, and trademark infringement in violation of New Jersey statutory law, common law, and the Lanham Act. ATX moved to dismiss the complaint on August 29, 2008. This Court denied the motion on July 31, 2009 finding, among other things, that the governing contractual term – paragraph 11 of the 2003 Agreement[1] – was potentially

---

[1] Paragraph 11, in its entirety, reads:

> RIGHT TO AUDIT: ATX will maintain accurate and complete records of all Services performed pursuant to this Agreement, all Customer calls received, billing records and all expenses incurred under the terms of this Agreement in such a manner that they may be readily inspected. MBUSA or its designated representatives shall have the right, at MBUSA's expense, from time to time, but no more frequently than twice annually upon reasonable notice and during regular business hours, to inspect and audit those books and records of ATX which relate directly to this Agreement and the Services performed hereunder. ATX shall cooperate with MBUSA in the conduct of any such inspection and audit. In addition, ATX shall at MBUSA's request and expense provide MBUSA with copies of any records relating to Customer service calls, billing records or the Services performed by ATX hereunder. ATX shall maintain at ATX' expense such records for the period

NOT FOR PUBLICATION

ambiguous.  (Op. 13 ("At this stage of the proceedings, absent any evidence of the parties'

intentions or other extrinsic evidence, 'it is simply too early to determine whose interpretation of

the relevant provision is correct or even whether the provision is sufficiently ambiguous to

warrant referral to the fact-finder.' . . . The Court will be in a better position to determine and

resolve any issue of ambiguity in paragraph 11 once discovery has occurred in this case.")

(internal citations omitted).)

 ATX answered the complaint on August 11, 2009, asserting the following counterclaims

against MBUSA:  (1) Breach of contract/repudiation/wrongful termination; (2) breach of

MBUSA's duty of trust and confidence and/or the implied covenant of good faith and fair

dealing; (3) request for a declaratory judgment setting forth the parties' rights and obligations

under the 2003 agreement; (4) misappropriation of ATX's trade secrets and/or confidential

information; (5) civil conspiracy to commit tortious interference with contract and current and

prospective customer relationships; and (6) unfair competition and civil conspiracy to commit

unfair competition.  ATX also asks for attorney's fees.

 MBUSA moved to dismiss ATX's counterclaims on November 19, 2009.

## LEGAL STANDARD

---

 outlined in the Record Retention Policy in Exhibit F.  All such records shall be available for inspection by MBUSA at ATX's principal place of business during the Term of this Agreement and for one (1) year after its termination or expiration.  ATX agrees to maintain the confidentiality of all such records until they are either destroyed or turned over to MBUSA.  ATX' obligation to maintain records, permit audit, remit sums collected for cellular services shall survive the termination or expiration of this Agreement to the extent that ATX continues to provide Basic Package Services to Customers who purchased Vehicles sold as equipped with Tele Aid during the Term of this Agreement.

 In addition, ATX shall have the right, at ATX's expense, from time to time, but no more frequently than twice annually upon reasonable notice and during regular business hours, to inspect and audit those books and records of MBUSA which relate directly to MBUSA's obligations under this Agreement, including the obligations imposed upon MBUSA to ensure certain practices of its dealers hereunder.

(2003 Agreement ¶ 11.)

NOT FOR PUBLICATION

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a plaintiff's complaint where the plaintiff has "fail[ed] to state claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  On such a motion, the court is required to "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).  However, "a pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'  To survive a motion to dismiss, a complaint must contain sufficient factual matter to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)) (internal citations omitted).

The moving party "bears the burden of showing that no claim has been presented." Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).   In reviewing a motion to dismiss, a court may consider the allegations of the complaint, documents attached to the complaint, and matters of public record.  Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 546.  For this reason, "when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factinder.'" Id. at 563 n.8.

**NOT FOR PUBLICATION**

# DISCUSSION

There is a preliminary question as to whether Texas or New Jersey law should apply to this case. This Court's July 2009 opinion resolving ATX's motion to dismiss found the choice of law question premature. (Op. 10.) Where it is unclear what law to apply, courts should apply the law of the forum state to resolve motions to dismiss. <u>Berry v. Mega Brands Inc.</u>, Civ. No. 08-1750, 2009 WL 233508, at *4 (D.N.J. Jan. 30, 2009) ("The Court can not make a choice-of-law determination at the pleading stage because it requires a fact-intensive analysis. Rather, at the pleading stage, the Court must apply the law of the forum state, New Jersey.") (internal citation omitted); <u>Taylor v. JVC Americas Corp.</u>, Civ. No. A. 07-4059, 2008 WL 2242451, at *2 (D.N.J. May 30, 2008). New Jersey law governs this motion, as it governed ATX's motion to dismiss.

ATX has asserted six counterclaims in its answer to MBUSA's complaint, several of which have multiple parts and rely on multiple discrete arguments. MBUSA has moved to dismiss all of them. Each will be taken separately.[2]

---

[2] Two general remarks may be made about the below analysis. First, several of ATX's counterclaims rest on its interpretation of paragraph 11 of the 2003 Agreement. This Court, in its opinion resolving ATX's motion to dismiss, has already found that "absent any evidence of the parties' intentions or other extrinsic evidence, 'it is simply too early to determine whose interpretation of the relevant provision is correct or even whether the provision is sufficiently ambiguous to warrant referral to the fact-finder.' . . . The Court will be in a better position to determine and resolve any issue of ambiguity in paragraph 11 once discovery has occurred in this case." (Op. 13 (quoting <u>Biovail Corp. Int'l v. Hoechst Aktiengesellschaft</u>, 49 F.Supp.2d 750, 775 (D.N.J. 1999).) Both parties have offered reasonable interpretations of that paragraph's language. All of MBUSA's arguments relying on paragraph 11 will be denied, because interpreting the paragraph in the light best suited to ATX shows that ATX has stated a claim.

Second, several more of ATX's counterclaims rely on the License Agreement. ATX was not a party to the License Agreement. ATX, moreover, concedes that this Agreement has expired and has been superseded by the 2003 Agreement. (ATX's Answer & Counterclaims 29; Confidentiality Agreement J-2 ¶ 6; 2003 Agreement ¶ 7.) Because ATX has established neither that it was ever a party to the License Agreement, nor that the License Agreement retains any binding force, MBUSA's motion to dismiss all of ATX's counterclaims that are based on the License Agreement will be granted.

NOT FOR PUBLICATION

## 1.   BREACH OF CONTRACT, REPUDIATION, AND WRONGFUL TERMINATION

ATX argues that MBUSA breached ATX's contractual right to exclusivity, MBUSA's

confidentiality obligations, and ATX's contractual right to retain the Tele Aid domain name.

ATX also asserts that MBUSA's May 2009 letter represented a repudiation or anticipatory

breach of the contract.  Each of these claims references some combination of the four contracts at

issue:  the 2003 Agreement, the Confidentiality Agreement, the License Agreement, and the

Subscriber Agreements.

A breach of contract claim has four elements.  To survive this motion to dismiss, ATX

must state a claim that (A) the parties entered into a valid and binding contract; (B) ATX

satisfied the terms of the contract; (C) MBUSA breached the contract; and (D) the breach caused

ATX to suffer a loss.  Nat'l Util. Serv., Inc. v. Chesapeake Corp., 45 F. Supp. 2d 438, 448

(D.N.J. 1999) (Walls, J.) (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice &

Procedure § 1235 at 269-271 (1990)).  ATX has the burden of establishing each element of

breach of contract.  See Nolan v. Control Data Corp., 243 N.J. Super. 420, 438 (App. Div. 1990).

Repudiation occurs where a promisor renounces his "contractual duty *before* the time

fixed in the contract for . . . performance."  Franconia Assoc. v. United States, 536 U.S. 129, 130

(1993) (citation omitted).   But repudiation is not itself a breach – rather, "a repudiation ripens

into a breach prior to the time for performance only if the promisee 'elects to treat it as such.'"

Id. at 143 (quoting Roehm v. Horst, 178 U.S. 1, 13 (1900)).

### A.   HAD ATX STATED A CLAIM THAT MBUSA BREACHED ATX'S EXCLUSIVITY RIGHTS UNDER THE 2003 AGREEMENT?

ATX claims in its Answer and Counterclaims that MBUSA's stated intention to use the

information it sought from ATX to transition customers to another telematics company starting

**NOT FOR PUBLICATION**

in November 2009 violates ATX's exclusivity rights under the 2003 Agreement.  MBUSA moves to dismiss this counterclaim on the ground that it a has right to transition customers under paragraph 8, and that paragraph 11, which requires ATX to transfer certain documents to MBUSA, undermines ATX's exclusivity arguments.

The 2003 Agreement states at paragraph 8 that ATX is the exclusive provider of telematics services during the term of the Agreement and for one year after the termination of the agreement with respect to new customers.[3]  This Court found paragraph 8 unambiguous and susceptible to interpretation on a motion to dismiss.  Under paragraph 8, any "exclusive right is limited *to the temporal term of the contract*," and "ATX's *exclusive* rights apply only to MBUSA vehicles retailed during the one year before termination and last only for one year following termination."  (Op. 15.)  This suggests that MBUSA is not restricted from transitioning customers to other service providers after the exclusivity period expires.

By contrast, this Court found that paragraph 11 was potentially ambiguous and so not susceptible to interpretation in resolving a motion to dismiss.  (Op. 15. ("[t]he parties' competing interpretations reveal an ambiguity in paragraph 11").)  Although MBUSA offers a reasonable interpretation of paragraph 11, interpreting paragraph 11 in the light best suited to ATX shows that ATX has stated a claim.  MBUSA's motion to dismiss is denied as to ATX's breach of contract claim resting on the 2003 Agreement.

---

[3] Three passages of the 2003 Agreement are expressly relevant to ATX's exclusivity rights:

(1) "WHEREAS, the parties desire to enter an agreement pursuant to which ATX will continue to be the exclusive provider of Telematics Services for certain Vehicles sold or leased by MBUSA under the terms and conditions of this Agreement." (2003 Agreement at 1.)

(2) "MBUSA agrees that ATX shall have the right to continue to market on a non-exclusive basis the Services for the life of those Vehicles sold with the Tele Aid devices during the Term of this Agreement."  (2003 Agreement ¶ 8.A.)

(3) In the event of non-renewal or termination for non-performance, "[f]or a period of one (1) year after termination or non-renewal, ATX will retain exclusive rights to market and provide the Services to each Tele Aid device equipped vehicle which is retailed during the one (1) year prior to termination or non-renewal, unless such termination is a result of the reasons described in Sections 8.B and 8.C."  (2003 Agreement ¶ 8.D.4.)

NOT FOR PUBLICATION

### B. HAS ATX STATED A CLAIM THAT MBUSA BREACHED ITS CONTRACTUAL CONFIDENTIALITY AND NONDISCLOSURE OBLIGATIONS UNDER THE FOUR AGREEMENTS?

ATX counterclaims that MBUSA's threatened use of the requested customer data would violate confidentiality and nondisclosure obligations under the 2003 Agreement, the Confidentiality Agreement, the License Agreement, and the Subscriber Agreements.  In its motion to dismiss ATX's breach of contract claim, MBUSA makes three discrete arguments as to confidentiality.  First, MBUSA argues that, because all of the requested data actually belongs to MBUSA, ATX cannot prevent MBUSA from disclosing it to third parties.  Second, MBUSA asserts that ATX has failed to demonstrate that MBUSA used or threatened to use the data improperly.  Third, MBUSA argues that the Subscriber Agreement expressly requires the subscribers' consent to the use and disclosure to third parties of customer information.

#### a.  2003 Agreement

MBUSA's first argument – that it owns the very data allegedly subject to confidentiality obligations – requires an analysis of paragraph 11 of the 2003 Agreement, which this Court has determined to be ambiguous and not subject to resolution at this phase of the proceedings. MBUSA's motion to dismiss ATX's confidentiality/non disclosure breach of contract counterclaim is denied as to the 2003 Agreement.

#### b.  Subscriber Agreement

The Subscriber Agreement states the following:

17. Privacy and Subscriber Data.

a. You agree that in conjunction with the provision of emergency security, roadside assistance and other Tele Aid Services, ATX may create an electronic or other record of your vehicle's location, direction, vehicle diagnostic data and other parameters, and of any incidents involving your vehicle.  You agree that these records and your account information may be retained by ATX and furnished to MBUSA and its affiliates and dealers and to third party service

**NOT FOR PUBLICATION**

> providers.  You consent to the use by us, our dealers and third party service providers of these records and your account information for the purposes of providing current and new Tele Aid Services, maintaining our relationship with you and administering your account.  You also consent to our contacting you in your vehicle or at your address . . . for the purpose of delivering telematics services to you and to discuss your account.

(Tele Aid Subscriber Agreement ¶ 17.)  MBUSA asserts that paragraph 17 of the Subscriber Agreement proves that MBUSA has a right to disclose the information at issue, because this paragraph requires the subscribers' express consent that MBUSA can use and disclose subscriber information.  ATX argues instead that the phrase "third party service providers" applies only to service providers that ATX uses in the course of fulfilling its duties as a telematics service provider.  (Def.'s Br. in Opp. to Pl.'s Mot. to Dismiss Counterclaims 11 ("ATX Opp. Br.").)

The language in paragraph 17 is ambiguous.  The key sentence states: "You consent to the use by us, our dealers and third party service providers of these records and your account information for the purposes of providing current and new Tele Aid Services, maintaining our relationship with you and administering your account."  If "us/our" refers to ATX, then ATX may be correct that the subscribers have not consented to the disclosure by MBUSA to another service provider in order to transition them from ATX.  If "us/our" refers to MBUSA, then such disclosure would probably be included within the scope of the subscribers' consent.  If "us/our" refers to both ATX and MBUSA, then it is unclear whether the purposes of disclosure would comprehend the purpose to which MBUSA would put the information: transitioning subscribers from ATX to another service provider.

Interpreting this ambiguous sentence in the light most favorable to ATX shows that ATX has stated a claim that MBUSA breached its confidentiality obligations under the Subscriber Agreements.  MBUSA's motion to dismiss ATX's breach of contract claim as to its confidentiality/nondisclosure obligations under the Subscriber Agreements is denied.

NOT FOR PUBLICATION

### c.   *Confidentiality Agreement*

Confidential Information, as defined in the Confidentiality Agreement, is information that either party "has determined to be necessary and appropriate for the sole purpose of evaluating a possible joint business relationship or other commercial arrangement between the parties." (Confidentiality Agreement J-1.)  Given this definition, Confidential Information does not appear to refer to information that the parties obtained during the course of the business relationship, such as any customer information that ATX received while operating under the 2003 Agreement.

Customer information obtained by ATX in the course of doing business with MBUSA – after the business relationship had already been established – cannot be information necessary for the sole purpose of evaluating a possible business relationship.   ATX offers no argument as to why the information sought by MBUSA is Confidential Information within the Confidentiality Agreement's definition of that term.  ATX's claim that MBUSA breached its exclusivity rights under the Confidentiality Agreement is dismissed.

### d.   *License Agreement*

MBUSA and ATX's predecessor, Protection One, entered into a License Agreement in 1998.  ATX quotes the following passage:  "Protection One . . . grant[ed] to [MBUSA] a non-exclusive, non-transferable and non-assignable license (without the right to sublicense), during the Term to use and operate the License Programs [(including Protection One's proprietary Telematics software)] for the sole purpose of providing Roadside Assistance and Product Information Calls to Mutual Customers."  The 1998 License Agreement also states that MBUSA's confidentiality obligations "shall survive the expiration or termination of this Agreement."

NOT FOR PUBLICATION

ATX fails to demonstrate that this agreement is relevant.  ATX was not a party to the License Agreement and ATX concedes that this Agreement has expired and has been superseded by the 2003 Agreement.  (ATX Answer & Counterclaims 29; Confidentiality Agreement J-2 ¶ 6; 2003 Agreement ¶ 7.)  Although the License Agreement states that the confidentiality obligations remain binding after its termination, these terms have been superseded by the Confidentiality Agreement.  MBUSA's motion to dismiss ATX's counterclaims as to the License Agreement is granted.

### C.  HAS ATX STATED A CLAIM THAT MBUSA REPUDIATED ATX'S RIGHTS TO THE TELE AID MARK AND TELE AID DOMAIN NAMES UNDER THE 2003 AGREEMENT?

ATX asserts that MBUSA repudiated ATX's rights under the 2003 Agreement by requiring ATX to transfer the Tele Aid domain names to MBUSA.  MBUSA argues in its motion to dismiss that the 2003 Agreement states that ATX's use of the domain names is in the sole discretion of MBUSA and subject to MBUSA's earlier approval.  The Agreement also states that each party shall cease the use of the other's trademarks after non-renewal.  ATX responds that it has a vested right in the Mark and the domain names because the 2003 Agreement required it to maintain Tele Aid offerings through Teleaid.com (ATX Opp. Br. 23), and because, over time, it has generated "substantial goodwill, brand recognition, and loyalty and value in the Tele Aid Mark."  (ATX Answer & Counterclaims 30 ¶ 9.)

The facts presented, even interpreted in the light best suited to ATX, show that the Tele Aid Mark was registered by Daimler AG on July 15, 2003, and that MBUSA is a wholly owned subsidiary of that company.  ATX concedes as much in its Answer.   The Tele Aid Mark was, then, a trademark of MBUSA.  As a result, ATX is subject to paragraph 6A of the 2003 Agreement, which states, in part, the following:

NOT FOR PUBLICATION

> MBUSA and/or its affiliated companies may, in their sole discretion, from time to time grant to ATX the right to use trademarks, trade name, service marks and logos owned by MBUSA or by its affiliates in connection with the documentation, presentation and marketing of the various Services to be provided by ATX, which uses will be subject to prior approval of MBUSA.  ATX will have no interest in or right to the use of such names, marks and/or logos, except the limited right of usage thereof as may be granted in connection with this Agreement during its term.

(2003 Agreement ¶ 6A.)  This paragraph is unambiguous:  ATX's license to use the Tele Aid

Mark exists at the pleasure of MBUSA during the term of the 2003 Agreement.  The Agreement

terminated on November 15, 2009 – after which date, ATX no longer had MBUSA's permission

to retain the Tele Aid Mark.  ATX fails to state a claim that MBUSA repudiated a right that ATX

clearly does not have.  MBUSA's motion to dismiss this counterclaim is granted.

### D. HAS ATX STATED A CLAIM THAT MBUSA'S MAY 2009 LETTER EFFECTUATED AN ANTICIPATORY BREACH OF THE 2003 AGREEMENT?

On May 12, 2009, MBUSA notified ATX that if ATX did not cure its material breach,

MBUSA would repudiate the contract.  The letter read:

> MBUSA views this breach/non-performance as material and incurable without, *inter alia*, provision of the Paragraph 11 Materials and an assignment as of November 15, 2009 . . . of all subscribers signed up for renewal while the Paragraph 11 Materials were and are being wrongfully withheld.  Absent that, MBUSA intends to terminate the Agreement for material non-performance, effective November 15, 2009.

(MBUSA Mot. to Dismiss Ex. 4 (Letter from James Conn, Telematics Product Management, to

Steven Millstein, President of ATX, May 12, 2009).)  ATX counterclaims that this notice

repudiated ATX's exclusive rights and constituted material breach and wrongful termination *as

of May 12, 2009*.  MBUSA asserts in its motion to dismiss that this was neither a termination

nor a revocation of any rights, but merely a request to cure a breach and a threat of termination

on November 15, 2009.  MBUSA argues that this notice was not self-effectuating, and that the

NOT FOR PUBLICATION

contract properly terminated on November 15, 2009 following the notice of termination that

MBUSA provided on November 15, 2007.

      This Court agrees with MBUSA.  The language of the letter that MBUSA sent to ATX

was clear:  it was a request to cure a breach and a threat to terminate.  MBUSA never followed

through on that threat, so ATX's argument that MBUSA's actions constitute anticipatory breach

is meritless.   MBUSA, moreover, merely threatened to terminate the contract on the day that it

was to terminate in any event – November 15, 2009.  Because MBUSA did not terminate the

Agreement before its proper end on November 15, 2009, MBUSA's motion to dismiss this claim

is granted.

### 2.  BREACH OF MBUSA'S DUTY OF TRUST AND CONFIDENCE AND/OR THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

      ATX asserts that MBUSA's "actions, statements, demands, and positions . . . constitute a

clear violation of MBUSA's covenant of good faith and fair dealing," under all four agreements.

(ATX Answer & Counterclaims ¶ 61.)  More specifically, ATX argues that the implied covenant

of good faith and fair dealing "[1] gives ATX an implied right to use the Tele Aid mark and

domain names to fulfill its marketing obligations under the 2003 Agreement and [2] prevents

MBUSA from accessing ATX records under that agreement to transition ATX customers to

another provider."  (ATX Opp. Br. 25.)  MBUSA responds in its motion to dismiss that these

claims are impossibly vague, and, moreover, that MBUSA is expressly entitled under the

agreements to use (and share with third parties) the customer data.

      As to the first assertion, the implied covenant of good faith and fair dealing exists in

every contract under New Jersey Law.  Brunswick Hills Racquet Club, Inc. v. Route 18

Shopping Ctr. Assoc., 182 N.J. 210, 224 (2005) ("Every party to a contract . . . is bound by a

duty of good faith and fair dealing in both the performance and enforcement of the contract.").

NOT FOR PUBLICATION

To determine whether there has been a breach of this implied covenant, a court must consider the express language of the contract as well as any course of dealing between the parties.  23 Richard A. Lord, Williston on Contracts § 63:22 (4th ed. 2009).

As ATX itself asserts, "the duty of good faith cannot be used to imply terms that are inconsistent with the contract's express terms."  (ATX Answer & Counterclaims 22 ¶ 75.)  The 2003 Agreement expressly limits ATX's right to use trademarks belonging to MBUSA, such as the Tele Aid trademark.  See supra Trademark/Domain Names Discussion § 1C at 11-12.  Given this, ATX cannot infer from the 2003 Agreement an "implied right to use the Tele Aid mark and domain names to fulfill its marketing obligations," after the termination of that agreement.

That leaves ATX's second assertion – that the implied covenant of good faith and fair dealing prevents MBUSA from accessing ATX's records for the sake of transitioning customers from ATX to another service provider.  Even assuming ATX is correct that MBUSA will use ATX's data to compete with ATX, such does not rise to the level of bad faith as required for a claim of breach of the implied covenant.  New Jersey case law requires ATX to make a showing of bad motive in order to state a claim for breach of the implied covenant of good faith and fair dealing.  See Joc, Inc. v. Exxonmobil Oil Corp., Civ. No. 08-5344, 2010 WL 1380750, slip op. at *6 n.10 (D.N.J.  Apr. 1, 2010) (citing Akshayraj, Inc. v. Getty Petroleum Mktg., Inc., Civ. No. 06-2002, 2007 WL 708852 (D.N.J. Mar. 6, 2007)).  Bad motive requires the following:

> [A] party exercising its right to use discretion in setting price under a contract breaches the duty of good faith and fair dealing if that party exercises its discretionary authority arbitrarily, unreasonably, or capriciously, with the objective of preventing the other party from receiving its reasonably expected fruits under the contract . . . .  In that setting, an allegation of bad faith or unfair dealing should not be permitted to be advanced in the abstract and absent improper motive.  Without bad motive or intention, discretionary decisions that happen to result in economic disadvantage to the other party are of no legal significance.

NOT FOR PUBLICATION

Wilson v. Amerada Hess Corp., 168 N.J. 236, 251 (2001) (internal citations removed).  In this case, ATX was not prevented from receiving any "reasonable expected fruits," because the 2003 Agreement expressly provides that ATX's exclusivity rights phase out one year following the Agreement's termination.  For this reason, ATX had no reasonable expectation that MBUSA would not compete with it or would not transfer its data to third parties which might compete with it.

The facts asserted by ATX do not appear to rise to the level of bad motive and do not allow the Court to draw the inference that MBUSA is liable for the alleged misconduct. "[T]hreadbare recitals of the elements of a cause of action . . . [and] unadorned, the-defendant-unlawfully-harmed-me accusation[s]" cannot survive a motion to dismiss.  Ashcroft v. Iqbal, 129 S.Ct. at 1949.  MBUSA's motion to dismiss ATX's breach of the implied covenant counterclaim is granted.

### 3. REQUEST FOR A DECLARATORY JUDGMENT SETTING FORTH THE PARTIES' RIGHTS AND OBLIGATIONS

MBUSA moves to dismiss ATX's four requested declaratory judgments regarding each party's rights and obligations under the 2003 Agreement, the Confidentiality Agreement, and the License Agreement.  These include: (1) "Declaration that MBUSA has no contractual right to the requested Tele Aid Customer Records for its stated purpose and that the 2003 Agreement limits the records subject to MBUSA's inspection and audit"; (2) "Declaration that MBUSA has no right to receive electronic or hard copies of the requested materials in New Jersey"; (3) "Declaration that ATX's Tele Aid Customer Accounts belong to ATX, not MBUSA or, in the alternative, that the Tele Aid Customer Accounts are mutually owned by ATX and MBUSA"; and (4) "Declaration that the 2003 Agreement, Confidentiality Agreement and License

NOT FOR PUBLICATION

Agreement provide that ATX's Tele Aid Customer Records and Licensed Programs belong to ATX and MBUSA cannot transfer such to Hughes." [4] (ATX Answer & Counterclaim 49-55.)

The purpose of a declaratory judgment is "to end uncertainty about the legal rights and duties of the parties to litigation . . . . " See N.J. Ass'n for Retarded Citizens, Inc. v. N.J. Dep't of Human Serv., 89 N.J. 234, 242 (1982). To grant a declaratory judgment, there must be an actual controversy, and parties must have a stake in the outcome. See Gilbert v. Gladden, 87 N.J. 275, 295 (1981). The New Jersey Declaratory Judgment Act requires that it be "liberally construed and administered." N.J. Stat. Ann. 2A:16-51. But the court has discretion to grant or deny a request for declaratory relief "when to do so would be just and fair." N.J. Ass'n for Retarded Citizens, 89 N.J. at 241.

A declaratory judgment action should lie "only in cases where it could be of some practical convenience to the parties." Larson v. Gen. Motors Corp., 134 F.2d 450, 453 (2d Cir. 1943) (citing Brillhart v. Excess Ins. Co., 316 U.S. 491 (1942)).

## A. DECLARATION THAT MBUSA HAS NO CONTRACTUAL RIGHT TO THE REQUESTED TELE AID CUSTOMER RECORDS FOR ITS STATED PURPOSE AND THAT THE 2003 AGREEMENT LIMITS THE RECORDS SUBJECT TO MBUSA'S INSPECTION AND AUDIT

MBUSA moves to dismiss ATX's request for this declaration on the ground that ATX's claim is refuted by the language of the 2003 Agreement. MBUSA's argument fails because this Court has already determined paragraph 11 to be potentially ambiguous, and not susceptible to interpretation at this stage of litigation. Nevertheless, a declaratory judgment action does not lie here, because this declaration could be of no "practical convenience" to the parties. A resolution of MBUSA's breach of contract claim will render ATX's declaratory relief moot – a determination of MBUSA's breach of contract claim will necessarily require an analysis of

---

[4] Hughes Telematics, Inc. ("Hughes"), is the third-party service-provider to which MBUSA intends to transfer subscribers.

NOT FOR PUBLICATION

paragraph 11, setting forth each party's duties and obligations.  MBUSA's motion to dismiss this request for a declaratory judgment is granted.

### B. DECLARATION THAT MBUSA HAS NO RIGHT TO RECEIVE ELECTRONIC OR HARD COPIES OF THE REQUESTED MATERIALS IN NEW JERSEY

ATX requests a declaration that paragraph 11 requires ATX to make records available for inspection only in ATX's Texas headquarters.  MBUSA responds, as above, by denying ATX's interpretation of paragraph 11 and stating that this claim is squarely refuted by the language of the 2003 Agreement.

As above, MBUSA's argument falls short, but its motion is nonetheless granted.  A determination of MBUSA's breach of contract claim will require resolution of this question – how and where MBUSA may access the information that ATX provides – at which time ATX's purported need for a declaratory judgment will be rendered moot.  MBUSA's motion to dismiss ATX's request for this declaratory judgment is granted.

### C. DECLARATION THAT ATX'S TELE AID CUSTOMER ACCOUNTS BELONG TO ATX, NOT MBUSA OR, IN THE ALTERNATIVE, THAT THE TELE AID CUSTOMER ACCOUNTS ARE MUTUALLY OWNED BY ATX AND MBUSA, AND THAT MBUSA IS PROHIBITED FROM TRANSITIONING OR OTHERWISE INTERFERING WITH TELE AID CUSTOMERS

ATX seeks a declaration that, under the 2003 Agreement, Tele Aid Customer Accounts belong to ATX.  The main evidence it offers in support of this contention is the language of the 2003 Agreement, which states that after termination or non-renewal, ATX will continue to own the 800 numbers, which represent the communication link between Tele Aid Customers and the Tele Aid service provider.  ATX also relies heavily on the License Agreement, which allegedly emphasizes the significance of the 800 numbers.

In denying ATX's motion to dismiss, this Court concluded that ATX's exclusive right to customers and customer records was limited to the temporal term of the contract.  Furthermore,

NOT FOR PUBLICATION

ATX's right to continued ownership of the 800 numbers "is not evidence of ownership but rather a reflection of ATX's right to control customer service for customers that it retains after termination."  (Op. 15.)  Whether MBUSA is permitted to or prohibited from transitioning non-exclusive Customers from ATX to another service provider is not expressly determined by clear contractual language, and so is not subject to dismissal at this point in the litigation.

With the benefit of discovery, it is possible that MBUSA's interpretation will prevail. Nevertheless, interpreting the facts in the light most favorable to ATX shows that at the very least ATX has stated a claim for relief.  MBUSA's motion to dismiss ATX's request for a declaratory judgment on this ground is denied.

### D. DECLARATION THAT THE 2003 AGREEMENT, CONFIDENTIALITY AGREEMENT AND LICENSE AGREEMENT PROVIDE THAT ATX'S TELE AID CUSTOMER RECORDS AND LICENSED PROGRAMS BELONG TO ATX AND MBUSA CANNOT TRANSFER SUCH TO HUGHES

ATX argues that the 2003 Agreement and the Confidentiality Agreement both require MBUSA to return all of ATX's information to ATX at the termination of the 2003 Agreement, and that both agreements prohibit transfer without ATX's consent.  Further, ATX asserts that the License Agreement shows that the Telematics System is proprietary to ATX.  ATX asks for a declaration that MBUSA is required to "return all customer information and Licensed Programs received from ATX upon termination of the 2003 Agreement, [that MBUSA] is prohibited from using all customer information and Licensed Programs to transition customers to another telematics provider, and [that MBUSA] is prohibited from transferring any customer information or Licensed Programs received from ATX to Hughes or any third party without ATX's prior written consent."  (ATX Answer & Counterclaims ¶ 81.)  MBUSA moves to dismiss this request for declaratory relief on the ground that it owns the customer data under the 2003 Agreement.

NOT FOR PUBLICATION

Paragraph 7 of the 2003 Agreement says:  "ATX hereby further agrees that the list of users, and information with respect to those users, it obtains from providing Services hereunder shall be maintained as confidential information and shall not be used by ATX or sold or rented by ATX to any third party for any use whatsoever, other than the provision of Services hereunder."  (2003 Agreement ¶ 7, "Confidential Information".)  The term "information with respect to users" obviously includes customer records.  Because the 2003 Agreement restricts ATX's use of customer records, ATX's argument that the 2003 Agreement proves that ATX owns the customer records is implausible.  ATX is not entitled to a declaration that ATX owns the Customer Records and that MBUSA must return all customer information to it.

ATX is also not entitled to a declaration that it owns the Telematics System.  The License Agreement, on which ATX relies, has expired and has been superceded by the 2003 Agreement. (ATX Answer & Counterclaims 29; Confidentiality Agreement J-2 ¶ 6; 2003 Agreement ¶ 7.)   It can offer no comfort to ATX.  MBUSA's motion to dismiss is granted.

## 4.  TORTIOUS MISAPPROPRIATION OF ATX'S TRADE SECRETS AND/OR CONFIDENTIAL INFORMATION

ATX counterclaims that it has created and maintained Licensed Programs including a confidential electronic database of customer information.  ATX alleges that, in violation of various agreements, MBUSA intentionally and wrongfully used and disclosed the Programs and database for the purpose of competing unfairly with ATX, causing ATX injury.

MBUSA argues that ATX's pursuit of this tort claim is an impermissible recasting of its contract claim.  ATX replies that its misappropriation of trade secrets claim does not merely recast its breach of contract claim as a tort, but rather rests on an independent duty of trust and confidence arising out of the parties' long term relationship that is independent of the confidentiality provisions in the various contracts.  (ATX Opp. Br. 34.)

**NOT FOR PUBLICATION**

MBUSA is correct.  "Under New Jersey law, a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law." Saltiel v. GSI Consultants, Inc., 170 N.J. 297, 316 (2002).  A tort action cannot lie for a breach of the implied duty of good faith and fair dealing.  See Saltiel, 170 N.J. at 316-17; Robeson Indus. Corp. v. Hartford Acc. & Indem. Co., 178 F.3d 160, 168-69 (3d Cir. 1999); Perkins v. Washington Mut., FSB, 655 F.Supp. 2d 463, 471 (D.N.J. 2009) ("But mere failure to fulfill obligations encompassed by the parties' contract, including the implied duty of good faith and fair dealing, is not actionable in tort.").

ATX asserts that MBUSA's duty of trust and confidence is independent of the contracts and provides a basis for the tort claim.  ATX's asserted duty of trust and confidence, however, is merely another name for the duty of good faith and fair dealing.  Because this counterclaim is a breach of contract claim recast as a tort claim, MBUSA's motion to dismiss ATX's tort claim for misappropriation of trade secrets and confidential information is granted.

### 5.  CIVIL CONSPIRACY TO COMMIT TORTIOUS INTERFERENCE WITH CONTRACT AND CURRENT AND PROSPECTIVE CUSTOMER RELATIONSHIPS

ATX alleges that Hughes and MBUSA collaborated to transition Tele Aid Customers to Hughes in violation of ATX's contractual exclusivity rights and with the intent to harm ATX by dishonest, unfair, or improper means.  MBUSA responds that, in New Jersey, a party cannot bring a claim for civil conspiracy where it has no actionable claim to the underlying offense. MBUSA argues that ATX has no underlying claim against MBUSA for tortious interference with contract because MBUSA was a party to the contract at issue.  See Printing Mart-Morristown v. Sharp Elec. Corp., 116 N.J. 739, 753 (1989) ("Where a person interferes with the performance of his or her own contract, the liability is governed by principles of contract law.").

NOT FOR PUBLICATION

ATX also has pled neither actual loss of contracts arising from the interference, nor malice on MBUSA's part.

A civil conspiracy in New Jersey is "'a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage.'" Banco Popular N. Am. v. Gandi, 184 N.J. 161, 177 (2005) (quoting Morgan v. Union County Bd. of Chosen Freeholders, 268 N.J. Super. 337, 364 (App. Div. 1993)). "Most importantly, the 'gist of the claim is not the unlawful agreement, but the underlying wrong which, absent the conspiracy, would give a right of action.'" Id. at 178. In Banco Popular, the New Jersey Supreme Court held that "a creditor in New Jersey may bring a claim against one who assists another in executing a fraudulent transfer. Such an action would require the creditor to prove that the conspirator agreed to perform the fraudulent transfer, '*which, absent the conspiracy, would give a right of action* . . . .'" Id. (emphasis added) (quoting Morgan, 268 N.J. Super. at 364). In short, proof of a civil conspiracy requires proof of the underlying claim.

In New Jersey, a plaintiff must prove four elements to establish a tortious interference claim. First, plaintiff must have a protected interest; second, defendant must have behaved with "malice" – that is, defendant must have intentionally interfered with the protected interest without justification; third, there must be a reasonable likelihood that the anticipated benefit from the protected interest would have been realized but for the interference; and fourth, economic damage must have resulted. Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 751-52 (1989); C&J Colonial Realty, Inc. v. Poughkeepsie Sav. Bank, FSB, 355 N.J. Super. 444, 478 (App. Div. 2002). There is no tortious interference with contract where the defendant is a party

NOT FOR PUBLICATION

to the contract at issue.  A party "cannot be guilty of inducing the breach of its own contract."

Kopp, Inc. v. United Tech., Inc., 223 N.J. Super 548, 559 (App. Div. 1988).

Because ATX and MBUSA were both parties to each of the contracts relevant to this case, ATX has no possibility of success in bringing a tortious interference with contract claim against MBUSA.  The civil conspiracy claim is a bald attempt to bootstrap an unavailable tort claim into a breach of contract suit.  Such cannot succeed.  ATX's civil conspiracy claim fails to state a cause of action.  MBUSA's motion to dismiss is granted.

### 6.  UNFAIR COMPETITION AND CIVIL CONSPIRACY TO COMMIT UNFAIR COMPETITION

ATX asserts that MBUSA has misused ATX's confidential records, customer information, and Licensed Programs to transition customers to Hughes, constituting unfair competition.  ATX further asserts that MBUSA is liable for conspiring with Hughes to do the same.  MBUSA responds that ATX has improperly pled the elements of an unfair competition claim, a tort which MBUSA alleges is intended to prevent unauthorized imitation and passing off one's goods or services as those of another.  Because ATX cannot make out an unfair competition claim, MBUSA alleges, it cannot make out a civil conspiracy claim.

The elements of civil conspiracy actions are set forth above; proof of civil conspiracy requires proof of the underlying wrong.  The outlines of common law unfair competition in New Jersey are fairly amorphous:  "the purpose of the law regarding unfair competition is to promote higher ethical standards in the business world.  Accordingly, the concept is deemed 'as flexible and elastic as the evolving standards of commercial morality demand.'  The judicial goal should be to discourage, or prohibit the use of misleading or deceptive practices which renders competition unfair."  Ryan v. Carmona Bolen Home for Funerals, 341 N.J. Super. 87, 92 (App.

NOT FOR PUBLICATION

Div. 2001) (finding unfair competition where appellant used his name "to palm off his wares as those of a namesake.").

The following have been found to be grounds for unfair competition liability:  the use of violence, engagement in fraud or intimidation, misrepresentation, threats of civil or criminal actions (C.R. Bard, Inc. v. Wordtronics Corp., 235 N.J. Super. 168, 174 (L. Div. 1989)), imitation of name or device to create confusion, a seller passing off his goods as those of another, using false representation to induce a customer to accept a spurious good or service (Squeezit Corp. v. Plastic Dispensers, 31 N.J. Super. 1954 (App. Ct. 1954)), and malicious and wanton interference (Gold Fuel Service, Inc. v. Esso Standard Oil Co., 59 N.J. Super. 6 (Ch. Ct. 1959)).  Unfair competition, then, is clearly aimed at preventing a party from duping a customer. See Wellness Pub. v. Barefoot, Civ. No. 02-3773, 2008 WL 108889, at *20 (D.N.J. Jan. 9, 2008) ("'[U]nfair competition has its roots in the common-law tort of deceit: its general concern is with protecting consumers from confusion as to source.'") (quoting Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U.S. 141, 157 (1989)).

ATX offers the following as evidence of unfair competition:  an agreement between MBUSA and Hughes giving Hughes the right to market and provide services to customers before the 2003 Agreement concluded; MBUSA's claim that it would use ATX's customer information to transition customers to a new telematics provider; MBUSA's failure to offer all purchasers of MBUSA vehicles a Subscriber Agreement; and MBUSA's claim that it may solicit customers with whom ATX has a current relationship.  None of these facts tend to fall into the general category of actions covered by common law unfair competition and none suggest deceptive conduct.  Because an action does not lie for unfair competition, an action does not lie for civil conspiracy to commit unfair competition.  MBUSA's motion to dismiss is granted.

24

NOT FOR PUBLICATION

### 7.  ATTORNEYS' FEES

ATX argues that it is entitled to attorneys' fees under a Texas statute.  This Court has reserved on the choice of law issue.  (Op. 16.) The Court must determine whether Texas or New Jersey law applies before it can determine the applicability of the Texas statute.  MBUSA's motion to dismiss is denied.

## CONCLUSION

MBUSA's motion to dismiss is granted as to the following counterclaims:  ATX's counterclaim that MBUSA breached its confidentiality and nondisclosure obligations under the Confidentiality Agreement and the License Agreement; ATX's counterclaim that MBUSA repudiated ATX's rights to the Tele Aid Mark and Tele Aid domain names under the 2003 Agreement; ATX's counterclaim that MBUSA's May 2009 Notice effectuated an anticipatory breach of the 2003 Agreement; ATX's counterclaim that MBUSA breached its duty of trust and confidence and/or the implied covenant of good faith and fair dealing; ATX's counterclaim requesting a declaration that MBUSA has no contractual right to the requested Tele Aid Customer Records for its stated purpose and that the 2003 Agreement limits the records subject to MBUSA's inspection and audit; ATX's counterclaim requesting a Declaration that MBUSA has no right to receive electronic or hard copies of the requested materials in New Jersey; ATX's counterclaim requesting a Declaration that the 2003 Agreement, Confidentiality Agreement and License Agreement provide that ATX's Tele Aid Customer Records and Licensed Programs belong to ATX and MBUSA cannot transfer such to Hughes; ATX's counterclaim that MBUSA Misappropriated ATX's trade secrets and/or confidential information; ATX's counterclaim that MBUSA is liable for civil conspiracy to commit tortious interference with contract and current

**NOT FOR PUBLICATION**

and prospective customer relationships; and ATX's counterclaim that MBUSA is liable for unfair competition and civil conspiracy to commit unfair competition.

MBUSA's motion to dismiss is denied as to the following counterclaims:  ATX's counterclaim that MBUSA breached ATX's exclusivity rights under the 2003 Agreement; ATX's counterclaim that MBUSA breached its confidentiality and nondisclosure obligations under the 2003 Agreement and the Subscriber Agreements; ATX's counterclaim requesting a declaration that ATX's Tele Aid Customer Accounts belong to ATX, not MBUSA or, in the alternative, that the Tele Aid Customer Accounts are mutually owned by ATX and MBUSA, and that MBUSA is prohibited from transitioning or otherwise interfering with Tele Aid Customers; and ATX's counterclaim that ATX is entitled to attorneys' fees under a Texas statute.

August 18, 2010                                          **s/William H. Walls**_____
                                                         United States Senior District Judge